## JAMES H. BACON v. JOSEPH I. BURNHAM.

*Promissory Note—Second Endorser—Protest—Waiver.*

Where a Defendant as endorser of a promissory note can only be made liable as a *second endorser*, no act of the first endorser, waiving notice of protest after the note has become due, can charge such second endorser.

A Plaintiff taking a promissory note after maturity is not a *bonâ fide holder*, and takes it subject to all equities, &c.

This action was brought against the Defendant as endorser upon a promissory note, made by Lewis Dunham to the order of T. H. Sweezey, dated Oct. 2, 1855, and payable in six months from date. On the back of the note there is a guarantee of collection, dated the 27th of October, 1855, and signed by Sweezey, and under this is written a waiver of protest, signed by Sweezey, but bearing no date, and then the name of the Defendant. The complaint contains two counts; the first upon the note simply, and averring an endorsement by Sweezey, and delivery by him to the Defendant, and his endorsement and delivery of the note to the Plaintiff. The second cause of action set forth in the complaint is a special count, averring facts by which it is sought to charge a liability upon the Defendant as a guarantor of the note to Sweezey ; but as no evidence was given under this count, no notice need be taken of it.

On the trial it appeared in evidence that one Kingsley bought the note of Sweezey, before maturity, and that when he first saw it, only the name of Defendant appeared upon the back. At this time Sweezey endorsed upon it the guarantee of collection, and nothing more. A suit was brought upon the note by Kingsley, after it fell due, against the maker and the Defendant, which seems to have failed, or been abandoned; and subsequently to this the second endorsement, containing a waiver of protest by Sweezey, was made and signed by him, and the note was then sold and transferred to the Plaintiff.

After the signature and protest, as against the Defendant, had

been proved, and the other facts had been made to appear, the Defendant objected to reading the note in evidence, upon the ground that the Plaintiff, having taken the note after it fell due, held it subject to all equities existing against it; that when Kingsley took the note he was chargeable with notice; that the Defendant was and could only be made liable as second endorser; and the payee not having assumed the responsibility of first endorser, the Defendant was not liable as endorser of the note, nor could he be made liable by any act done, or endorsement made, after the note was past due.

These objections were overruled, and the Defendant subsequently made a motion to nonsuit the Plaintiff, on the same grounds, which was denied, and the Defendant excepted. No evidence being given by Defendant, a verdict was directed for the Plaintiff, for the amount of the note and interest, and the exceptions were ordered to be heard at the General Term, where the verdict was sustained, and judgment ordered thereon for the Plaintiff; from which judgment an appeal is taken to this Court.

*J. H. Reynolds* for Plaintiff.

*W. F. Ramsay* for Defendant.

BACON, J.—There appears to be a misconception, on the part of the Plaintiff's counsel, of the true import of the few facts disclosed upon the trial. He seems to assume, that nothing being shown upon the trial as to the time when the Plaintiff became the owner of the note, it may be taken for granted that he obtained it before maturity; or if not, that having received it from Kingsley, who did become the owner before maturity, the title of the Plaintiff can no more be impeached than that of Kingsley.

Now, while it is true that it is not shown at what particular date the Plaintiff obtained title to the note, it is very clear that it was after maturity, for it was not transferred to him until after a suit had been brought upon the note by Kingsley, and at that time Sweezey's name appeared upon it in no other character than as a guarantor for its collection. And if it be true that the title of the Plaintiff could no more be impeached than could that of Kingsley, this

would not determine the question in controversy,—whether, under the facts which are here disclosed, Kingsley could himself maintain any suit against the Defendant as second endorser on this note.

In considering this case we are to remember that we are only concerned now with the cause of action set forth in the first count, and the proof made under it, since no attempt was made to prove any of the facts set up as the special cause of action in the second count.

The note is made payable to Sweezey, or his order, and being endorsed by the Defendant, the legal presumption from this simple fact (nothing appearing to show that he intended to assume any other character) is, that his responsibility was that of second endorser, with all the rights, and subject only to the liabilities of that position. It must be supposed, in the absence of any proof to the contrary, that, perceiving the name of the payee in the note, he endorsed it on the presumption that the name of such payee, to whose order it was made payable, would also at some time appear upon the note, for only thus could it become negotiable.

When the Defendant placed his name upon the note, he did so as a second endorser, with all the rights and responsibilities which attached and belonged to him in that character, and that assumed that he had or would have a responsible party before him.

The locality of the names was immaterial; and whether the name of Sweezey should appear above or below his own, or before or after his, in point of time, would not change in any respect his position as second endorser. As the case stood upon the trial, it is entirely clear that Sweezey could have maintained no suit on the note against the Defendant; and the case is brought directly within the authority of Herrick *v.* Carman (12 Johns. 159). That case was this : R., for value received, delivered his note to C., made by R., and payable to C. or order, and endorsed by H. in blank. C. afterwards sold the note to B., endorsing it also himself. In an action brought by B., as endorsee of the note, against H., it was held, that as C., the original payee, could not maintain an action against H., as endorser, neither could B. recover against

him ; affirming the principle, that where a first endorser cannot maintain an action against a subsequent endorser, no person deriving title under the first endorser, with knowledge of the facts, can recover against such subsequent endorser.

This case has been uniformly followed and approved in the Courts of this State (Seabury v. Hungerford, 2 Hill, 80 ; Ellis v. Brown, 6 Barb. 282 ; Moore v. Cross, 19 N. Y. 229).

The case at bar is stronger than the one cited, from the fact that there the name of C., the payee of the note, appeared as endorser before the transfer, while here, when Kingsley took the note, the name of Sweezey was not upon it except in a special character, under which alone he could be made liable, and not as endorser ; and thus a liability was sought to be charged upon the Defendant which he had not assumed, and which could not be created by the transaction of placing the name of Sweezey upon the note after it had matured.

The rights of the Defendant must, on the clearest principles, be what they were when the note fell due ; and as Kingsley took the note with only a guarantee, he was chargeable with notice of the legal rule, that this was not an endorsement, and was incapable of enforcement as such. The Plaintiff, taking the note after maturity, is not a bonâ fide holder, within the commercial rule, which might otherwise protect him, but is subject to all the equities that existed in favor of the Defendant at the time the note passed into his possession.

In the opinion of the Court below it is said that, under the state of facts set out in the complaint, there is no doubt, if sustained by proof, the Plaintiff could recover, as indeed Sweezey could, under the authority of Moore v. Cross (19 N. Y. 227). But the difficulty is, that there was no proof offered to sustain this branch of the case, and until there was, the action stood simply upon the paper itself; and the rights of the parties were to be determined upon only the facts thus made to appear.

Upon another trial a very different question may possibly arise, which need not, and indeed cannot, now be determined.

As the case now stands, I do not see how the Plaintiff was

entitled to recover, and am of opinion that the judgment should be reversed, and a new trial granted, with costs to abide the event.

GROVER, J.—The first question for consideration in this case is, whether the Defendant would be made liable for the payment of the note in any other position than as second endorser to Sweezey, to whose order the note was made payable. No evidence was given as to the consideration, or purpose for which the Defendant became endorser. The liability must be determined from the paper alone.

That he cannot be charged in any mode other than as endorser was settled in this State in Hall *v.* Newcomb (7 Hill, 416). The rule settled in this case was reasserted by this Court in Spies *v.* Gilmore (1 Com. 322), and has since been regarded as the law of the State.

The Defendant being liable only as endorser, can he be made so liable except as subsequent to Sweezey?

This question was substantially decided in Herrick *v.* Carman (10 Johnson, 224). In that case it was held that Herrick, who endorsed the note of one Ryan, payable to L. Carman & Co., or order, in the same way the Defendant endorsed the note in suit, was not liable thereon to the payees, and that consequently the Plaintiff, to whom the payees had endorsed the same for collection, could not recover. The same doctrine was reaffirmed by the Court in Herrick *v.* Carman (12 Johns. 159). This has been regarded as the law for more than half a century. A rule governing the rights of parties to commercial paper, of such standing, ought not to be changed by the Court. It follows that Sweezey, the payee, could not have maintained an action against the Defendant upon the note, had he been the owner at the time it became due. But the evidence shows that he was not such owner at that time, but that before it became due he transferred it to one Kingsley; accompanied by the following writing thereon, signed by him : "For value received, I hereby guarantee the collection of the within note of the maker and endorser, with costs of collection."

The express contract entered into by Sweezey, upon the trans-

fer of the note, it is obvious, was all the obligation incurred by
him.    That made him the surety of the maker, and of the Defen-
dant, to Kingsley, for the collection of the note.    It did not make
Sweezey surety to the Defendant for the payment of the note by
the maker.    Consequently, had the Defendant, upon default
of the maker and the service of the proper notices to charge en-
dorsers, voluntarily paid the note to Kingsley, he would have had
no remedy against Sweezey upon the contract.    But the note on
its face showed that the Defendant had only agreed to assume the
responsibility of endorser upon the contingency of Sweezey's becom-
ing liable as first endorser.    Kingsley knew this from the paper,
and also knew that Sweezey had not thus become liable.    He
therefore was notified by the paper itself, that the contingency
had not arrived which was a prerequisite to the liability of the
Defendant.    He could not recover, and therefore abandoned the
suit brought by him against the Defendant for the recovery of the
note, procured the endorsement of Sweezey, waiving demand and
notice, and transferred the note to the Plaintiff.    But this endorse-
ment was made and the note transferred to Plaintiff long after
it became due.

The Plaintiff was not therefore a bonâ fide holder, and took it
subject to any defence that was available against Kingsley at the
time of the transfer.    The question, then, is whether, if the De-
fendant was not liable at the time the note became due, he could
be so made by any subsequent endorsement of Sweezey.

Had Sweezey endorsed and negotiated the note before maturity,
and the Defendant had been charged with its payment in behalf
of any bonâ fide holder, he would have had the right at once to
pay the holder, and proceed against Sweezey to recover his in-
demnity.    Any act of the holder suspending this right would have
discharged the Defendant.

For the same reasons, any omissions to perfect this right, so that
it was in full force at the time of maturity, would have the like
effect.    If the parties, by the endorsement of Sweezey after the
note became due, could thereby create a liability against the
Defendant, they could do the same thing at any time within

six years from that time, the Defendant having no right in the mean time to take any steps for his protection.

This was not the contract into which the Defendant entered. That was to become liable as second endorser, with Sweezey as first, with all the rights incident thereto. He was not liable upon the proof given, in which there was no conflict. The motion for a nonsuit should have been granted. Upon a second trial proof may be given bringing the case within the principle of Moore *v.* Cross (19 N. Y. 227). In that event the Plaintiff will entitle himself to a recovery.

The judgment appealed from should be reversed, and a new trial ordered, costs to abide events.

All concur.

Reversed.

JOEL TIFFANY,
State Reporter.
