TRUMAN E. DAVIS, Respondent, *v.* NORMAN BLY, Appellant, Impleaded with Another.

1. PROMISSORY NOTE — LIABILITY FOR INDORSEMENT BEFORE DELIVERY TO PAYEE. Where a note is indorsed before its delivery to the payee at the request of the maker, the indorser knowing before such indorsement that his name is required by the payee as a condition of making the loan to, or procuring it for, the maker and as security for its payment, the indorser is placed in the same relation to the payee as if he had indorsed by express agreement with him, and is liable as first and not as second indorser.

2. PRESUMPTION ARISING FROM FACE OF NOTE NOT CONCLUSIVE. The presumption arising from the face of a note that one who indorsed the

· same before delivery to the payee is not liable to the latter, is not conclu-
sive, and may be overcome by evidence that he intended to become liable
as first, and not as second, indorser.

*Davis* v. *Bly*, 32 App. Div. 124, affirmed.

(Argued October 11, 1900; decided November 20, 1900.)

APPEAL from a judgment of the Appellate Division of the
Supreme Court in the third judicial department, entered July
21, 1898, upon an order reversing a judgment in favor of
defendant entered upon a dismissal of the complaint by the
court at a Trial Term, and granting a new trial.

The nature of the action and the facts, so far as material,
are stated in the opinion.

*C. C. Van Kirk* for appellant. No cause of action was
shown against the defendant Bly, and the plaintiff was properly
nonsuited. (*Herrick* v. *Carman*, 12 Johns. 159; *Murphy* v.
*Merchant*, 14 How. Pr. 189; *Bradford* v. *Martin*, 3 Sandf.
647; *Hull* v. *Martin*, 2 T. & C. 420; 59 N. Y. 652; *Lester*
v. *Paine*, 39 Barb. 616; *Wilds* v. *R. R. Co.*, 24 N. Y. 430;
*Deyo* v. *R. R. Co.*, 34 N. Y. 9; *Dwight* v. *G. Ins. Co.*, 103
N. Y. 359; *Linkhauf* v. *Lombard*, 137 N. Y. 417; *Hemmens*
v. *Nelson*, 138 N. Y. 517.)

*Francis A. Smith* for respondent. The evidence must be
construed in the light most favorable to plaintiff, and if dif-
ferent conclusions might be drawn from the facts proven, it
was the province of the jury to draw them. (*Higgins* v.
*Eagleton*, 155 N. Y. 466; *Powell* v. *Powell*, 71 N. Y. 71;
*Jaffray* v. *Brown*, 74 N. Y. 393.) The facts and circum-
stances disclosed by the evidence were sufficient to charge the
defendant Bly as first indorser. (*Moore* v. *Cross*, 19 N. Y.
227; *Meyer* v. *Hibscher*, 47 N. Y. 265; *Coulter* v. *Rich-
mond*, 59 N. Y. 478; *Jaffray* v. *Brown*, 74 N. Y. 393;
*Witherow* v. *Slayback*, 158 N. Y. 649; *McPhillips* v. *Jones*,
73 Hun, 516; *Cumming* v. *Roderick*, 16 App. Div. 339.)

VANN, J. This action was brought upon a promissory note
of which the following is a copy:

" $200.                    CROWN POINT, N. Y., *Oct. 1st,* 1895.

" One year after date I promise to pay to the order of Truman E. Davis two hundred dollars at   *   *   *   value received with interest.                    C. D. GAGE."

Indorsed : " NORMAN BLY."

The plaintiff, although payee of the note, sought to recover from Bly upon the allegation that the latter indorsed at the request of the maker for the purpose of giving him credit with the plaintiff, who, in reliance upon the indorsement, accepted the note and lent the maker $200 thereupon.

The defendant Bly alone answered, denying that he indorsed for the purpose of giving Gage credit, and alleging that his indorsement was to give the plaintiff credit and to enable him to get the note discounted. At the close of the evidence for the plaintiff the court granted a nonsuit, but the judgment entered accordingly was reversed by the Appellate Division and the defendant Bly now comes here.

It appeared from the testimony of the plaintiff that at about the date of the note Gage, the maker, applied to him for a loan of $200, stating that he would give him a note with a good backer if he would advance the money on it. The plaintiff told him that he had the money, and with a good backer he would let him have the amount he wanted. Gage thereupon said, " How will Mr. Bly be ? " and the plaintiff replied, " Mr. Bly will be all right." The next day Gage delivered the note indorsed by Bly to the plaintiff, who, relying solely upon said indorsement, let him have $200 upon it.

Gage was sworn as a witness for the plaintiff, and testified that at about the time the note was given he was owing the plaintiff for some fertilizer which he had purchased of him, and that the plaintiff had requested payment therefor. Gage told him that he had not the money, but wanted to borrow some to pay him and others, and inquired if the plaintiff knew where he could get a couple of hundred dollars. The plaintiff replied that a friend of his had some money in trust that he could get on a good note or security.

Gage then applied to Mr. Bly, who had been in the habit

of indorsing for him, and asked if he would indorse a note for him. Mr. Bly replied that he would rather Gage would get some one else. Shortly afterward Gage again saw Bly, who asked him if he had an indorser for the note, and Gage said no. Bly asked if he had the note with him, and thereupon Gage showed him the note and asked him if he would indorse it. Bly replied, "Yes, he would indorse that as he considered Davis good enough and did not need any indorsement," and accordingly he indorsed it. During one of these conversations Gage told Bly that he had applied to another person to indorse the note, but he had refused. He also told Bly that the plaintiff had said he could get the money for him on the note or on a good note. All this occurred before Bly indorsed the note. Upon his cross-examination Gage testified: "I told Mr. Bly that Davis told me that he could get the money on a good note. Q. Did he say from whom he could get it? A. No, sir." On his redirect examination Gage testified: "Q. I understand you to say that Mr. Davis said in substance to you that he could get the money for you on a good note? [Objected to as already answered.] Q. But you told Mr. Bly what you have testified to as to the conversation between you and Mr. Davis; is that so? A. Yes, sir."

This is the substance of the testimony so far as it related to the principal issue. From this evidence the jury might have inferred that Bly knew that Gage was negotiating with the plaintiff for a loan; that the plaintiff required an indorser as a condition of making or procuring the loan; that Bly had loaned the credit of his name to Gage before by way of indorsement; that Bly knew that the plaintiff did not regard Gage as good; that Bly, however, regarded the plaintiff as good; that the note when shown to Bly was payable to the order of the plaintiff, yet Gage told him that he had no indorser, but needed one, and finally that Bly indorsed the note to enable Gage to comply with plaintiff's requirement of a good indorser.

The statement of Bly that he would indorse, as he thought the plaintiff was good, is not conclusive upon the question of

intent, for that remark, which may have been merely a self-serving declaration, is to be considered in connection with what Bly did and what he knew when he did it. Bly was not sworn, and the jury might have read between the lines of Gage's testimony that he was trying to take care of his indorser. The note was to run for a year and was not payable at any specified place, so that it could not have been used at a bank in the ordinary course of affairs. As was said by the court below, " No good reason appears in the case for the plaintiff wanting the indorsement of Bly if he himself expected to become the first indorser. The plaintiff, as Gage told Bly, wanted Gage to bring him a good note, not one that he could make good by himself becoming the first indorser."

Whether the plaintiff was to make the loan or procure it is of no importance, for, as we have held, " It is not necessary that the indorser should know the precise nature of the credit to be procured. It is sufficient that he knows that a credit is to be obtained of the payee." (*Coulter* v. *Richmond*, 59 N. Y. 478, 483.) If Bly indorsed with the knowledge that his name was required by the payee as a condition of making or procuring the loan, and as security for its payment, he was placed in the same condition in relation to the payee as though he had indorsed by express agreement with him. (*Meyer* v. *Hibsher*, 47 N. Y. 265.)

The plaintiff was entitled to the most favorable inferences warranted by the evidence, and, notwithstanding the presumption arising from the face of the note, the jury might have found that the appellant intended to become liable as first and not as second indorser. (*Moore* v. *Cross*, 19 N. Y. 227; *Jaffray* v. *Brown*, 74 N. Y. 393; *Witherow* v. *Slayback*, 158 N. Y. 649.)

The judgment of the Appellate Division should be affirmed, and judgment absolute directed for the plaintiff under the defendant's stipulation, with costs in all courts.

O'Brien, Bartlett, Haight and Martin, JJ., concur; Parker, Ch. J., and Landon, J., not sitting.

Judgment affirmed.